Carla GROSSOEHME, Appellant,

v.

Margaret CORDELL, Personal
Representative of Estate of
Harland Hoyt, Respondent.

No. WD 49779.

Missouri Court of Appeals,
Western District.

June 20, 1995.

Motion for Rehearing and/or Transfer to
Supreme Court Denied Aug. 1, 1995.

Application to Transfer Denied
Sept. 19, 1995.

Jerold L. Drake, Grant City, for appellant.

Scott Ross, Maryville, for respondent.

Before BRECKENRIDGE, P.J., and ELLIS and LAURA DENVIR STITH, JJ.

LAURA DENVIR STITH, Judge.

## I. *FACTUAL AND PROCEDURAL BACKGROUND*

Carla Grossoehme was injured on April 21, 1986 when the motor vehicle in which she was riding was struck by a motor vehicle driven by Harland Hoyt. Ms. Grossoehme suffered serious and continuing injuries. Her medical costs alone were over $150,000. Mr. Hoyt was intoxicated at the time of the accident.

Mr. Hoyt was prosecuted for felony assault. On March 20, 1987, he entered a guilty plea to that charge. The guilty plea was not the result of a plea bargain. At Mr. Hoyt's sentencing on March 20, 1987, Ms. Grossoehme's and Mr. Hoyt's attorneys jointly requested that Mr. Hoyt be given probation so that he could pay restitution to Ms. Grossoehme. The prosecuting attorney recommended denial of probation, as did the Board of Probation and Parole.

The trial judge requested evidence as to Mr. Hoyt's ability to make restitution and stated that he "hadn't been thinking probation" but would consider it because of "the request of the Grossoehmes." Mr. Hoyt testified that he wanted to make restitution and thought he could do so in the amount of approximately $40,000 at the rate of $4,000 per year. When asked about his ability to pay, he said, "Today I don't see it as being no problem other than something health come up and something, I don't know why I can't."

After hearing statements of counsel and the testimony of Mr. Hoyt, the judge sentenced Mr. Hoyt to seven years in prison. He then suspended execution of the sentence and placed Mr. Hoyt on probation for a period of five years. The judge ordered, as a special condition of probation, that Mr. Hoyt not consume alcohol and that he make restitution to Ms. Grossoehme in the amount of at least $4,000 per year for ten years.

The record does not reveal that Mr. Hoyt signed any separate agreement to abide by

the restitutionary provision, nor does it indicate that he signed a promissory note to Ms. Grossoehme in which he promised to pay the restitution. The record does show, however, that on March 27, 1987, one week after the sentencing, Ms. Grossoehme signed a full and complete release of claims arising out of the automobile accident. In return, she received $25,000, which was the limit of Mr. Hoyt's insurance coverage. The release did not mention the restitution which Mr. Hoyt had agreed only a week earlier to pay as a part of the conditions of his probation.

Mr. Hoyt made $4,000 payments each year for five years. His probation ended shortly after the fifth payment was made in 1992. Shortly thereafter, the Grossoehmes saw him frequenting a tavern. Mr. Hoyt failed to make the sixth payment, due on March 20, 1993. A few months later, on June 3, 1993, Ms. Grossoehme brought this suit. In Count I, she alleged breach of contract, claiming that she was a third-party beneficiary of Mr. Hoyt's promise to pay restitution. In Count II, she alleged Mr. Hoyt was negligent in failing to fulfill his promise to pay restitution. In Count III, she alleged that he had not intended to keep his promise to pay restitution at the time he made it, and thus was liable for fraud.

Mr. Hoyt died shortly after being personally served with process and Margaret Cordell, personal representative of his estate, was substituted as defendant in his stead. The case was tried to the court. After considering the evidence and hearing arguments of counsel, the trial court entered judgment for defendant on all three counts. Ms. Grossoehme does not appeal the grant of judgment against her claim on Count II for negligence, but she does appeal judgment against her on Counts I and III. We affirm.

## II. *THE TRIAL COURT HAD NO AUTHORITY TO ORDER RESTITUTION AS A CONDITION OF PROBATION FOR MORE THAN FIVE YEARS.*

Section 559.021, RSMo 1986[1] permits use of restitution as a condition of probation. It states:

In addition to such other authority as exists to order conditions of probation, the court may order such conditions as the court believes will serve to compensate the victim, any dependent of the victim, or society.

§ 559.021.2. The statute provides no further guidelines regarding or limitations on the payment of restitution.

■ Generally, restitution, as well as other conditions of probation, are enforced by revoking a defendant's probation if the defendant fails to meet the conditions of probation. This power to revoke probation necessarily ends when the probationary period expires, unless the court initiated the revocation proceedings prior to expiration of the probationary period. *Wesbecher v. State*, 863 S.W.2d 2, 4–5 (Mo.App.1993).

■ In this case, for reasons not revealed by the record, Mr. Hoyt failed to make his sixth annual payment of restitution. However, this failure occurred after the expiration of the five year period of probation ordered by the trial court. The trial court thus would have had no power to revoke Mr. Hoyt's probation as a penalty for violating probation, for Mr. Hoyt's probation had ended at the expiration of the five year period. At that point, Mr. Hoyt was no longer obligated to follow the then-expired conditions of probation, and the trial court lost jurisdiction over Mr. Hoyt. *Wesbecher*, 863 S.W.2d at 4–5. Any action taken by the court against Mr. Hoyt after the five-year probationary period expired would have been absolutely void. *Id.* at 5.

The complicating issue in this case is that, while the trial court said it imposed probation for only five years, it in fact ordered that restitution be paid for a ten-year period. It cannot be argued, however, that the trial court thereby, in effect, *sub silentio* ordered a 10 year probationary period as to this one condition of probation. This is because such an interpretation of the order would put it in violation of section 559.016. That section of

1. All statutory references are to the Revised Statutes of Missouri 1986 unless otherwise indicated.

the Missouri statutes explicitly limits the total time for which a defendant may be placed on probation for a felony such as the one committed by Mr. Hoyt, including any extension, to a maximum term of five years. § 559.016. No special rule permits imposition of a longer period of probation where restitution is ordered.

■ Thus, the trial court was without authority to order Mr. Hoyt, as a condition of his probation, to pay restitution for a period of greater than five years. To the extent that the trial court's order purported to do so, it was in excess of the court's jurisdiction, and was void. For this reason, the additional five years of restitution cannot be enforced as a condition of probation.[2]

### III. *PLAINTIFF IS NOT A THIRD-PARTY BENEFICIARY OF MR. HOYT'S AGREEMENT TO PAY RESTITUTION FOR TEN YEARS AS A CONDITION OF PROBATION.*

Apparently recognizing that restitution cannot be directly enforced as a condition of probation, Ms. Grossoehme argues that she should be able to enforce it as a civil obligation. She claims that Mr. Hoyt's agreement to pay restitution for 10 years was, in effect, a contract entered into by Mr. Hoyt, and that she is entitled to enforce that contract because she, as the recipient of the restitution, is a third-party beneficiary of the contract.

■ A third-party beneficiary is one who is not in privy to a contract or to its consideration but who may nonetheless maintain a cause of action for breach of the contract. *Andes v. Albano,* 853 S.W.2d 936, 942 (Mo. banc 1993). Only a third party, for whose *primary* benefit the parties contract-

ed, may maintain such an action. *Id.* It is not necessary that the parties to the contract have as their "primary object" the goal of benefitting the third party, but only that the third party be a primary beneficiary. *Id.*[3]

■ A prerequisite to finding Ms. Grossoehme was a third-party beneficiary of a contract is a finding that the contract was ever formed. *Misiak v. Aylward,* 584 S.W.2d 610, 613 (Mo.App.1979). Ms. Grossoehme has failed to identify any contract of which she could be found to be a third-party beneficiary.

While Ms. Grossoehme asked the trial judge to grant probation to Mr. Hoyt so that he would be able to pay her restitution, she was clearly not herself a party to any contract with defendant. Neither did the judge himself enter into a contract with defendant; he just imposed a condition of probation. In other circumstances, it has been recognized that a plea bargain agreement between the state and a defendant can result in a binding contract. *Shepard v. State,* 549 S.W.2d 550 (Mo.App.1977). Moreover, criminal defendants normally sign agreements with the Board of Probation and Parole in which they promise to keep the terms of probation. If restitution is ordered, they will often sign a promissory note for the amount ordered.

Mr. Hoyt, however, did not enter his guilty plea pursuant to a plea agreement. In fact, the prosecutor actually opposed the grant of probation, with or without the condition of restitution. Neither did he sign a promissory note or otherwise sign an agreement to the terms of probation ordered. For these reasons, we do not need to determine whether a third-party beneficiary relationship could exist if Mr. Hoyt had signed such a contract, for we do not have one here.[4]

---

2. In any event, of course, the conditions of probation were imposed only on Mr. Hoyt personally. As noted, the normal remedy for the violation of such conditions is to revoke probation. Upon Mr. Hoyt's death, the entire issue therefore became moot.

3. Whether Ms. Grossoehme is a third-party beneficiary is to be determined by the intent of the parties. That intent may be gleaned from the situation of the parties, the facts and circumstances attending the execution of the contract, and the apparent purpose the parties intended to

accomplish. *J. Louis Crum Corp. v. Alfred Lindgren, Inc.,* 564 S.W.2d 544, 547 (Mo.App.1978).

4. We note that other courts which have addressed the issue whether a condition of probation which orders restitution can be enforced by a third-party beneficiary as a matter of public policy have generally refused to recognize a right to sue civilly to enforce the conditions of probation, *see, e.g., People v. Milne,* 690 P.2d 829, 837 (Co. banc 1984); *Fox v. State,* 176 W.Va. 677, 683, 347 S.E.2d 197, 203 n. 6 (1986), in the absence of a statute such as 18 U.S.C. § 3663(h)

■ In any event, Ms. Grossoehme has released any right she might otherwise have had to enforce the order of restitution. As noted earlier, only a week after the trial court issued its order granting probation to Mr. Hoyt, Mr. Hoyt and Ms. Grossoehme entered into a settlement in the amount of $25,000, which was the extent of Mr. Hoyt's insurance coverage. Ms. Grossoehme signed a full and unconditional release of all claims.

In standard language, Ms. Grossoehme released both Mr. Hoyt and his heirs, administrators, executors, successors and assigns, of any claims which Ms. Grossoehme then had, or claims which she "hereafter may have arising out of, in consequence of, or on account of" the accident which occurred on April 21, 1986. The release nowhere mentioned the promise of Mr. Hoyt to pay $40,-000 to Ms. Grossoehme in restitution over a period of ten years, nor did it in any way refer to the criminal proceeding or to any of the other matters noted above. Rather, it said that the payment of the $25,000 was the sole consideration for the release.

Ms. Grossoehme has argued that this release only extended to the accident, and did not include the present injury, which she claims arose not out of the accident but out of Mr. Hoyt's failure to keep his promise to pay her restitution. We think that this distinction is illusory. Clearly, the accident provided the reason for the restitution. If the parties had intended Ms. Grossoehme to be able to civilly enforce Mr. Hoyt's agreement to pay $4,000 per year for ten years, they could and should have incorporated those terms into the release. They did not do so, yet the release is nonetheless a release of all claims. It necessarily includes any claim for restitution from Mr. Hoyt on a third-party beneficiary theory, or on any other theory.

## IV. *PLAINTIFF FAILED TO PROVE A CLAIM FOR FRAUD.*

Ms. Grossoehme also claims that Mr. Hoyt is liable for fraud because at the time he

specifically providing for civil enforcement of the order by the victim during the period of restitution. *See United States v. Dudley,* 739 F.2d 175 (4th Cir.1984). Even under this statute, however, payment of restitution cannot extend beyond the period of probation, not to exceed five years. 18 U.S.C. § 3663(f)(2) (1995); *United States v. Diamond,* 969 F.2d 961 (10th Cir.1992). *See*

promised to pay her $4,000 per year for 10 years, he did not intend to keep the promise.

■ Common-law fraud requires a showing of: (1) a false material representation, (2) the defendant's knowledge of the representation's falsity, (3) defendant's intent that the representation be acted upon by plaintiff in a manner reasonably contemplated, (4) plaintiff's ignorance of the falsity of the statement, (5) plaintiff's rightful reliance on the truth of the statement and right to rely thereon, and (6) proximate injury. *Norden v. Friedman,* 756 S.W.2d 158, 164 (Mo. banc 1988).

■ In order to be actionable, Mr. Hoyt's statements must have related to an existing fact. *White v. Mulvania,* 575 S.W.2d 184, 188 (Mo. banc 1978); *Wion v. Carl I. Brown & Co.,* 808 S.W.2d 950, 955 (Mo.App.1991). Generally, statements of intent as to future events are not actionable as fraud, but a promise accompanied by the present intent not to perform is a misrepresentation of present state of mind and will support an action for fraud. *White,* 575 S.W.2d at 188; *Empire Bank v. Walnut Products, Inc.,* 752 S.W.2d 404, 407 (Mo.App. 1988).

■ Thus, in order to prevail, Ms. Grossoehme bore the burden establishing that Mr. Hoyt did not intend to perform the promise to make restitution at the time he made the promise. *Empire Bank,* 752 S.W.2d at 407. *Callicoat v. Acuff Homes, Inc.,* 723 S.W.2d 565, 568 (Mo.App.1987).

Ms. Grossoehme argues that Mr. Hoyt knew the representation was false at the time he made it. She bases this assertion on the fact that Mr. Hoyt made $4,000 payments each year for 5 years but refused to make the 6th payment which was due after he had been discharged from probation. Ms. Gros-

*also People v. Bertalot,* 164 Ill.App.3d 89, 115 Ill.Dec. 942, 518 N.E.2d 467 (1987). So far as appears from the opinions, however, none of these cases addressed a situation in which the defendant signed a separate agreement to pay the victim. Of course, if the agreement were with the victim, then the victim would not need to resort to a third-party beneficiary theory at all.

soehme concludes that "[a] clear inference can be made from Mr. Hoyt's failure to make his 6th payment to appellant when due that he never intended to make this payment." She speculates that "[h]is plan was to wait five years until he was off probation and return to his former life style."

We disagree that the evidence is sufficient to show that, at the time Mr. Hoyt made the representation, he did not intend to keep his promise. When asked about his ability to pay the restitution at the time of sentencing, Mr. Hoyt replied, "Today I don't see it as being no problem other than something health come up and something, I don't know why I can't." The only evidence to which Ms. Grossoehme points as indicating lack of intent to perform is the fact that Mr. Hoyt ceased making payments after his period of probation expired.[5] Nothing in the record indicates whether Mr. Hoyt's health deteriorated (Mr. Hoyt died three months after the missed payment was due) or whether other financial circumstances, arising between the 1992 and 1993 payments, rendered him unable to make the 1993 payment.

In addition, defendant asserts that Mr. Hoyt's alleged fraudulent statement was not material, a necessary element of fraud. *Hueseman v. Medicine Shoppe Int'l, Inc.,* 844 S.W.2d 128, 130 (Mo.App.1993). A misrepresentation is material if it would be likely to induce a reasonable person to manifest his assent, or if the maker knows that it would be likely to induce the recipient to do so. *Best v. Culhane,* 677 S.W.2d 390, 394 (Mo.App.1984). The test of materiality is objective and not subjective. *Osterberger v. Hites Constr. Co.,* 599 S.W.2d 221, 228 (Mo. App.1980).

While Ms. Grossoehme claims that the trial court relied on Mr. Hoyt's representation and that the representation was material to the court's decision regarding probation, it is Ms. Grossoehme, not the court, who must have relied on the representations and suffered a loss. *Fox v. Ferguson,* 765

S.W.2d 689, 690–91 (Mo.App.1989) (In order to recover for fraud, the hearer must rely on the representation being true).

The test of whether a plaintiff relied upon a misrepresentation is simply whether the representation was a material factor influencing final action. *Hereford v. Unknown Heirs,* 315 S.W.2d 412, 420 (Mo. 1958); *Manufacturers Am. Bank v. Stamatis,* 719 S.W.2d 64, 70 (Mo.App.1986). Nothing in the record suggests that Ms. Grossoehme forbore from making a claim against Mr. Hoyt for any of his assets or that she and her husband would have made any different settlement of their personal injury and consortium claims if Mr. Hoyt had not made his representations as to the restitution payments. They settled for the limit of the insurer's liability.

For these reasons, we affirm the trial court's grant of judgment to defendant on all three counts of Plaintiff's Petition.

All concur.

---

5. Ms. Grossoehme also argues that Mr. Hoyt's lack of intent to perform the promise is shown by the fact that he began to frequent a tavern as soon as his probation was over. We fail to understand the significance of this point, however. Once his probation was concluded, Mr. Hoyt was free to visit taverns and drink. His right to do so was limited only by the conditions of probation, and these limitations did not extend beyond the period of probation.